IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK BRENTLEY SR.,        )
                          )
                          )
        Plaintiff,        )
                          )  Civil Action No. 20-489
    vs.                   )
                          )
CITY OF PITTSBURGH, MIKE GABLE,     )
WILLIAM PEDUTO, TYRONE CLARK,       )
CYNTHIA MCCORMICK, LINDA
JOHNSON-WASLER,

        Defendants.

## **MEMORANDUM OPINION**

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint and brief (Docket Nos. 50, 51), Plaintiff's Response in opposition thereto (Docket No. 53), and Defendants' Reply (Docket No. 54). For the reasons set forth herein, Defendants' motion is granted.

### I.   **Background**

Plaintiff Mark Brentley Sr. is a former employee of the City of Pittsburgh who, in 2020, filed suit against the Defendants City of Pittsburgh, Mike Gable, William Peduto, Tyrone Clark, Cynthia McCormick,[1] and Linda Johnson-Wasler. (Docket No. 3). Plaintiff is unrepresented. Shortly after Plaintiff filed his initial complaint, Defendants filed a motion to dismiss, prompting Plaintiff to move to amend. (Docket Nos. 7, 12). The Court granted Plaintiff's first motion to amend. (Docket No. 13). Plaintiff thereafter filed his first amended complaint (Docket No. 15), Defendants filed a motion to dismiss the amended complaint (Docket No. 28), Plaintiff filed a

---

[1]   Defendants have indicated in the brief in support of the motion to dismiss that Defendant McCormick is deceased. (Docket No. 51, pg. 3 n.1).

response/motion to amend (Docket No. 31), and the Court granted the motion to amend (Docket No. 34). Plaintiff then filed his second amended complaint (Docket No. 36), Defendants again moved to dismiss (Docket No. 40), Plaintiff sought leave to cure his second amended complaint (Docket No. 44), and the Court granted Plaintiff's motion for leave to cure by amendment (Docket No. 47).

Plaintiff next filed his Third Amended Complaint (Docket No. 48) (hereinafter "Complaint") wherein he alleges employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Rights Act ("PHRA"),[2] wrongful termination in violation of the Fourteenth Amendment under 42 U.S.C. § 1983, retaliation in violation of 42 U.S.C. § 1981, and defamation under Pennsylvania law.[3] (Docket No. 48). The general nature of Plaintiffs claims are: he is African American (*id.* ¶ 23); he was employed as a foreman for the Public Works Division of the City of Pittsburgh (*id.* ¶¶ 6-7); he filed a compensation grievance and a complaint with the "Human Relation Commissions and … EEOC" in August 2017 (*id.* ¶¶ 11-12); Defendants thereafter retaliated against him by, among other things, suspending him pending termination (*id.* ¶ 13); he was made to sign a "Last Chance Agreement" admitting to substance abuse, unlike white employees who were not required to sign such agreements (*id.* ¶¶ 15-16, 24); and, ultimately, his employment was terminated on March 27, 2019, for not complying with the instructions of the Civil Service Commission by insisting on making a

---

[2]  The elements of a discrimination claim under Title VII and PHRA are substantively the same. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006).

[3]  The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and over his Pennsylvania claims pursuant to 28 U.S.C. § 1367.

notation with his signature on the Last Chance Agreement that he was signing under duress (*id.* ¶ 18).[4]

More specifically, Plaintiff's allegations are articulated in his statement of the case and in four counts wherein he alleges he was first hired by the City of Pittsburgh in 1985 and was promoted to foreman in July 2014. (*Id.* ¶ 6). He filed a pay grievance at some point between his promotion to foreman and August 4, 2017, based on a belief that as painter foreman he was entitled to higher pay than he received. (*Id.* ¶¶ 9-11). He filed a complaint—presumably related to this same grievance—with the Human Relations Commission and Equal Employment Opportunity Commission ("EEOC") on August 4, 2017. (*Id.* ¶ 12). Thereafter, he is alleged to have experienced discrimination, wrongful termination, retaliation, and defamation.

In **Count I** Plaintiff alleges racial discrimination in violation of Title VII and the PHRA insofar as he was made to sign a "Last Chance Agreement" under duress to avoid termination, the agreement required his effective admission to being a substance abuser, and the City of Pittsburgh "failed to require the white employee to agree to Last Chance Agreements." (*Id.* ¶ 24).[5] Plaintiff also alleges therein he was denied an opportunity to ask his attorney to review the agreement. (*Id.* ¶ 16). In addition to alleging that white employee(s) were not made to sign Last Chance Agreements, Plaintiff alleges that he "believes because he is African American, he has not been

---

[4]   The allegations in this Third Amended Complaint are largely identical to the allegations in Plaintiff's second amended complaint (Docket No. 36).

[5]   A "Letter of Understanding & Last Chance Agreement" is attached to the Complaint. (Docket No. 48-1). Next to Plaintiff's signature is a handwritten notation that the signature was rendered under duress. (Docket No. 48-1, pg. 5). The date of signature is March 28, 2019. (*Id.*). By its own terms, this Last Chance Agreement states that it "can be offered as an alternative to discharge to an employee who acknowledges substance abuse and/or behavioral problems" and sets forth terms by which an employee may be "reinstated and/or continue to be employed [thereunder] …." (*Id.*, pg. 2). Plaintiff explicitly relies of the Last Chance Agreement in his Complaint; accordingly, we may consider it in our evaluation of Defendants' motion. *Pension Ben. Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

treated the same in promotion and discipline as his white counterpart." (*Id.* ¶ 23).  With respect to Defendants' refusal to accept Plaintiff's signature on the Last Chance Agreement with the "under duress" notation, Plaintiff alleges that he "was terminated for an unjust cause and [that] his termination was unrelated to his job or performance of his job." (*Id.* ¶ 26).  Plaintiff alleges he "received a right to sue letter by the EEOC" in January and September 2020.  (*Id.* ¶ 20).[6]

In **Count II** Plaintiff alleges constitutionally deficient termination pursuant to 42 U.S.C. § 1983 in that he was denied a *Loudermill* hearing prior to termination.  (*Id.* ¶ 28).  He adds to this that Defendants wrongfully subjected him to the most severe level of discipline set out in a Civil Service Disciplinary Guideline when he disputed whether he was required to work night shift on January 22, 2019.  (*Id.* ¶¶ 28–30).  With respect to termination, Plaintiff's allegations indicate that, prior to termination, Plaintiff was told to write a letter explaining why he should not be terminated (*id.* ¶ 31); Defendants received his letter, but only agreed not to terminate him if he participated in a substance abuse program (*id.* ¶ 32); Plaintiff *initially refused* to sign an agreement that he would so participate, and he was sent two discharge letters (*id.* ¶¶ 33-34); Plaintiff appealed termination to the Civil Service Commission (*id.* ¶¶ 35-36); and, based on arguments and the evidence, the Civil Service Commission reinstated Plaintiff but "stipulate[ed] him to sign the Last Chance Agreement" (*id.* ¶37).[7]  Defendants are alleged to have refused Plaintiff's signature on the Last Chance Agreement because of his "under duress" notation and to have thus wrongfully terminated

---

[6] Two notices, each entitled "Dismissal and Notice of Rights," are addended to the Complaint. (Docket No. 48-2, pgs. 2-3).  One is dated January 6, 2020, and the other one is dated September 28, 2020.  (*Id.*).  With them is a letter dated June 30, 2021, indicating a dismissal and notice of rights was intended to be issued on September 28, 2020, but appeared to have not been mailed to Plaintiff.  (*Id.*, pg. 4).

[7] A March 27, 2019, decision issued by the Civil Service Commission of the City of Pittsburgh indicates that, with respect to Plaintiff's appeal of his termination from the Department of Public Works, a public hearing had been held and the City had not provided sufficient evidence of Plaintiff's termination or quitting so he would be reinstated to his position with back pay "contingent upon signing a Last Chance Agreement by 4:00 PM on March 28, 2019." (Docket No. 48-4).

his employment in violation of his "rights under the Fourteenth Amendment." (*Id.* ¶¶ 38-39). Plaintiff further alleges that he was deprived of due process because Defendants did not "follow[] the disciplinary step provided by the employment contract," that is, they skipped lesser disciplinary events to impose suspension pending termination. (*Id.* ¶ 40).[8]

In **Count III** Plaintiff alleges retaliation pursuant to 42 U.S.C. § 1981, specifically, that he engaged in protected activity by filing a grievance with his union, the Human Relations Commission, and the EEOC on August 4, 2017, concerning "unsafe issues within the Public Work Second Div." and unfairness. (*Id.* ¶ 44). He also alleges that he was engaged in protected activity "when filing with Civil Service Commission on March 27, 2019, when the City of Pittsburgh terminated his employment." (*Id.* ¶ 45). More generally, he alleges he "complained of race discrimination and threatened to file a lawsuit" and was terminated "[d]ue to [his] protected activities." (*Id.* ¶¶ 46-47, 48 ("The termination of Plaintiff's employment was causally related to Plaintiff's prior protected activities under 1981.")).

Finally, in **Count IV** Plaintiff alleges defamation pursuant to Pennsylvania state law, 42 Pa. Cons. Stat. §§ 8341–8345 and § 8343 (*Id.* ¶ 50), based on statements Defendants allegedly made to reporters that his employment was terminated because he refused to write a letter despite being given multiple chances to do so. (*Id.* ¶¶ 50-52). Plaintiff alleges he was damaged by such statement(s) because he was running for City Council at the time (May 2019). (*Id.* ¶ 53). Plaintiff also alleges that his character was cast in "a negative light" when he was made to sign the Last

---

[8] The City of Pittsburgh Operating Guideline Disciplinary Manual (Revised 4/2009) (hereinafter "Operating Guidelines") is addended to the Complaint. (Docket No. 48-3). The stated purpose of the Operating Guidelines is "[t]o establish *guidelines* in determining if disciplinary action is proper and if so, the level of action to be taken." (*Id.*) (emphasis added). In a section identified as the policy statement for the Operating Guidelines, it sets out that the manual will "provide supervisors with *suggested procedures* to issue disciplinary action[.]" (*Id.*) (emphasis added). The Operating Guidelines indicate that the City of Pittsburgh uses five levels of discipline ranging from a verbal warning to discharge, and further indicate that supervisors are to "use their own best judgment to decide which level of disciplinary action is appropriate." (*Id.*).

Chance Agreement because it "made him appear to be a substance abuser." (*Id.* ¶ 54). Defendants have moved to dismiss Plaintiff's Complaint in its entirety.

II.     **Standard of Review**

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555). Moreover, while this standard "does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the

requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Additionally, although courts must generally construe *pro se* pleadings liberally, courts are not required to accept legal conclusions disguised as statements of fact, unsupported conclusions, or unwarranted inferences. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Thus, "a pro se complaint must still contain factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011) (internal quotation marks and citation omitted).

To review a complaint under this standard, the Court proceeds in three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *Id.* (quoting *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the well-pleaded facts that are left are true and assesses "whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).[9]

### III.   Legal Analysis

In their motion to dismiss, Defendants argue that Plaintiff's allegations are fundamentally deficient and that, because Plaintiff has been permitted to amend his claims three times now, the Court should dismiss his claims with prejudice. Having considered Plaintiff's Complaint with the

---

[9] In the context of the claims presented here, Plaintiff's alleged failure to exhaust his administrative remedies is properly considered under Rule 12(b)(6). *See Wilson v. MVM, Inc.*, 475 F.3d 166, 174-76 (3d Cir. 2007); *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002); *Robinson v. Dalton*, 107 F.3d 1018, 1021-22 (3d Cir. 1997). Furthermore, the Court may consider a plaintiff's EEOC Charge without converting a motion to dismiss into a motion for summary judgment. *See Wormack v. Shinseki*, Civ. Action No. 2:09-cv-916, 2010 WL 2650430, at *1 n.1 (W.D. Pa. July 1, 2010) ("[I]n the Third Circuit, it is well settled that a court may consider administrative documents, such as a plaintiff's EEOC charges, and public records without converting the motion to dismiss to a motion for summary judgment.").

benefit of the liberal construction afforded *pro se* plaintiffs, *see Haines*, 404 U.S. at 520, the Court has uncovered no plausible claims in the pleadings and will grant Defendants' motion.

With respect to **Count I**—wherein Plaintiff alleges racial discrimination—Defendants argue that dismissal is appropriate because Plaintiff cannot show he satisfied the administrative exhaustion requirement. Before bringing such a claim before the Court, a plaintiff must exhaust his administrative remedies by "fil[ing] a charge of discrimination with the EEOC and procur[ing] a notice of the right to sue." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (citation omitted). Moreover, the allegations presented to the Court "must . . . fall 'fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom'" to be exhausted. *Id.* (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)).

It is not at all clear that Plaintiff exhausted his discrimination claim. In his Complaint Plaintiff avers that in 2017 he filed a grievance with his union, the EEOC, and the Pittsburgh Human Relations Commission. (Docket No. 48, ¶ 44). With respect to that 2017 grievance, Plaintiff alleges it concerned being "a whistleblower about unsafe issues," and either additionally involved or led to unfairly being forced to work night shifts, and "unfair discipline and force unfair agreement." (*Id.*). Attached to Plaintiff's Complaint are two EEOC notices of rights, one with a 2017 case number, the other with a 2019 case number. (Docket No. 48-2). But neither the allegation with respect to Plaintiff's 2017 EEOC grievance, nor the attached EEOC notices-of-rights provide this Court with enough information to determine whether, before coming to this Court, Plaintiff first complained to the EEOC that Defendants discriminated against him on the basis of his race by making him sign a Last Chance Agreement while not asking the same of white employee(s).

Moreover, even if Plaintiff had made it clear to the Court that he exhausted his allegations of race discrimination, he has nevertheless failed to plausibly allege discrimination. Under Title VII it is unlawful for employers to discriminate based on race. 42 U.S.C. § 2000e-2(a)(1). The gist of Plaintiff's allegation of discrimination is that he was made to sign a Last Chance Agreement to avoid termination, unlike an unspecified white employee or employees. At this motion to dismiss stage, Plaintiff is not required to pick a theory of liability or make out his *prima facie* case of discrimination, but he must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Rule 8 requires a "'showing,' rather than a blanket assertion, of entitlement to relief." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 555 n.3). Indeed, the Complaint must set out sufficient factual matter to show that the claim is facially plausible. Doing so allows the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged. *Fowler*, 578 F.3d at 210. Importantly, this plausibility determination requires a "context-specific" analysis that "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211. Plaintiff's attempt to meet this standard falls short because his allegations are either speculative and conclusory—*e.g.*, his generally alleged belief that "because he is African American, he has not been treated the same in promotion and discipline as his white counterpart"—or threadbare recitals of the legal elements of the claim —*e.g.*, his nonspecific allegation that "[t]he City of Pittsburgh has failed to require the white employee to agree to Last Chance Agreements." (Docket No. 48, ¶¶ 23-24). When stripped of these mere speculative and conclusory allegations and viewed in the context of Plaintiff being offered a Last Chance Agreement at the conclusion of a Civil Service Commission proceeding specific to him, what remains of the Complaint does not permit the Court to infer more than the mere possibility of misconduct. It is devoid of any showing

9

of a plausible claim for race discrimination.  Accordingly, Plaintiff has failed to state a claim at Count I for violations of Title VII or the PHRA.

With respect to **Count II**—wherein Plaintiff alleges wrongful termination in violation of the Fourteenth Amendment of the Constitution under 42 U.S.C. § 1983—Defendants argue that dismissal is appropriate because Plaintiff has not adequately alleged a deprivation of the process Plaintiff was due.  The Due Process Clause requires that an employee with "a constitutionally protected property interest in his employment" be given "some kind of a hearing" prior to termination.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).  In *Loudermill*, the Supreme Court determined that such a "hearing" must provide "notice and an opportunity to respond."  *Id.* at 546.  Notice provides an employee with the "charges against him" and an "explanation of the employer's evidence."  *Id.*  An opportunity to respond means an opportunity for the employee to "present his side of the story" and to "present reasons … why [the] proposed action should not be taken."  *Id.*  Whether there has been a deprivation of procedural due process is generally subject to a two-prong inquiry wherein a court asks, first "whether the plaintiff has a property interest" in his employment, and second, what procedures provide "due process of law."  *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011).

Defendants argue that Plaintiff has not adequately alleged a denial of an appropriate hearing,[10] and the Court agrees that there are a number of deficiencies in Plaintiff's allegation of inadequate process.  To start, according to Plaintiff's own allegations, when he was suspended pending termination for refusing to work the night shift on or around January 22, 2019, he did in fact have an opportunity to challenge that action before the Civil Service Commission which

---

[10]   Defendants do not appear to challenge Plaintiff's protected interest in his employment with the City of Pittsburgh.

reinstated him on the condition that he sign the Last Chance Agreement. (Docket No. 48, ¶¶ 30-37). In his brief in response to Defendants' motion to dismiss, Plaintiff suggests his allegations of constitutionally inadequate process are about additional processes (*e.g.*, an additional hearing) that he should have received *after* he refused to sign the Last Chance Agreement without an under-duress notation. (Docket No. 53, ¶ 14). Even considering this elaboration of Plaintiff's allegations in his oppositional brief,[11] the Court determines that Plaintiff has alleged only dissatisfaction with the outcome of the process he was afforded and not the denial of adequate process itself. Defendants point out that the Civil Service Commission is subject to Pennsylvania Local Agency Law, which provides a right of appeal to the Pennsylvania Court of Common Pleas. *See Robinson v. City of Philadelphia*, No. CIV.A. 10-1277, 2011 WL 3624996, at *7 (E.D. Pa. Aug. 17, 2011), aff'd, 491 F. App'x 295 (3d Cir. 2012); 2 Pa. Cons. Stat. § 752. Plaintiff gives no indication of having pursued an appeal of the Civil Service Commission decision, fatally undermining his allegation of a due process violation. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.").

Another shortcoming of Plaintiff's allegation of wrongful termination is that he has not alleged who among the Defendants is culpable. And with respect to the City of Pittsburgh, Plaintiff has not alleged facts to support municipal liability under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the

---

[11] A plaintiff may not amend his complaint by the arguments in a brief in opposition to a motion to dismiss. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom").

Additionally, to the extent that Plaintiff premises his Section 1983 claim on an allegation that suspension pending termination was an inappropriately severe sanction under the applicable "Civil Service Disciplinary Guideline," his own pleadings show that the level of discipline imposed was discretionary and, in any event, he was able to protest that determination before the Civil Service Commission. (Docket No. 48, ¶¶ 32, 35-37; Docket No. 48-3 (the Operating Guidelines)). Further, the Civil Service Commission reinstated him on the condition that he sign the Last Chance Agreement. (*Id.* ¶ 37). These factual allegations do not constitute a plausible claim for deprivation of adequate process in violation of the Fourteenth Amendment pursuant to Section 1983.

With respect to **Count III**—wherein Plaintiff alleges retaliation in violation of 42 U.S.C. § 1981—Defendants argue that Plaintiff's allegations of protected activity and retaliatory acts are too conclusory to have stated a plausible retaliation claim. A retaliation claim will "survive [a] motion to dismiss if [the plaintiff] pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) [he] engaged in [protected activity], (2) the employer took adverse action against [him]; and (3) a causal link exists between [his] protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789.

Plaintiff's allegations appear to include two instances of protected activity, the first being an August 4, 2017, grievance he filed with his union, the Human Relations Commission, and the EEOC that made him a "whistleblower about unsafe issues within the Public Work Second Div." (Docket No. 48, ¶ 44). With respect to this August 4, 2017 grievance that made him a whistleblower, Plaintiff also references being made to work night shifts, "unfair discipline," and

"unfair agreement." (*Id.*). Plaintiff has not provided further information about, *e.g.*, the unsafe issues he complained about, or of specific instances of unfairness from that time (2017).[12] The second instance of protected activity referenced by Plaintiff is his complaint to the "Civil Service Commission on March 27, 2019, when the City of Pittsburgh terminated his employment." (*Id.* ¶ 45).[13] Following those specific allegations, Plaintiff more generally alleges in a threadbare and conclusory fashion that he "complained of race discrimination and threatened to file a lawsuit," without showing any details about when he complained or to whom. (*Id.* ¶ 46). Nor are there any averments that could be read to provide insight into the contents of those complaints beyond the vague references to "force[d] . . . night shifts," "unfair discipline," and "force[d] unfair agreement." (*Id.* ¶ 44). In his response in opposition to the motion to dismiss, Plaintiff attempts to cast his retaliation claim as a "Cat's Paw" claim, *i.e.*, a retaliation claim pursuant to which Plaintiff could potentially "hold his employer liable for the animus of a nondecisionmaker." (*McKenna v. City of Philadelphia*, 649 F.3d 171, 177 (3d Cir. 2011) (cited in Docket No. 53, ¶ 25). Under such theory of liability, Plaintiff argues that the "Defendants worked in tandem to have Plaintiff work shifts that were not contractual" after his August 2017 grievance. (Docket No. 53, ¶ 25).

Even assuming that Plaintiff has plausibly alleged engaging in protected activity, his Complaint nonetheless fails to state a retaliation claim. At ¶ 47 and ¶ 48 of the Complaint, Plaintiff states: "Due to Plaintiff's protected activities, the Defendants terminated Plaintiff's employment"; and "The termination of Plaintiff's employment was causally related to Plaintiff's prior protected activities under 1981." Once again, these allegations are conclusory and thus are to be disregarded

---

[12] Whether the August 4, 2017, grievance referenced in ¶ 44 of the Complaint was part of or related to the pay grievance referenced in ¶ 11 is unclear but, ultimately, does not affect the Court's consideration of Plaintiff's allegations of retaliation.

[13] In Plaintiff's brief in opposition to the motion to dismiss, he appears to clarify that March 27, 2019, is the date he was retaliated against for protected activity and not an instance of protected activity itself. (Docket No. 53, ¶¶ 22-23).

at this juncture. *Iqbal*, 556 U.S. at 681. Plaintiff provides no allegations of fact in support of those conclusions. Importantly, Plaintiff has not alleged *when* he was subject to retaliatory acts for his 2017 grievance to establish the temporal proximity needed to plausibly allege the causal connection between his protected conduct and any putative adverse employment actions. Likewise, this Court cannot plausibly infer that Plaintiff's protected activity on August 4, 2017 is causally linked to his employment termination nearly two years later on March 27, 2019 because it is temporally too remote as a matter of law. *See Williams v. Phila. Hous. Auth.*, 380 F.3d 751, 760 (3d Cir. 2004) (two months' temporal proximity is not "unduly suggestive" of causation); *see also Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (nineteen months did not "standing alone, support a finding of causal link"); *see also Richetti v. Saks Fifth Ave.,* Civ. Action No. 11-256, 2013 WL 3802476, at *6-7 (W.D. Pa. July 18, 2013) (fifteen days between protected activity and adverse employment action sufficiently demonstrated temporal proximity).

Finally, with respect to **Count IV**—wherein Plaintiff alleges defamation—Defendants argue Plaintiff's allegations are so vague that they give no indication of who uttered the purportedly defamatory statements. In any event, the Political Subdivision Tort Claims Act (PSTCA), 42 Pa. Cons. Stat. §§ 8541–8564, immunizes municipalities and their employees from tort liability "for official actions unless the employee's conduct goes beyond negligence and constitutes a crime, actual fraud, actual malice, or willful misconduct." *Vargas v. City of Philadelphia*, 783 F.3d 962, 975 (3d Cir. 2015) (internal quotation marks and citation omitted). Defamation is not excepted from the PSTCA. *Keeler v. Everett Area Sch. Dist.*, 533 A.2d 836, 837 (Pa. Commw. Ct. 1987).

Defendants proffer that *if* Plaintiff is taking umbrage with statements made by Defendant Peduto during his time as mayor, Plaintiff has not sufficiently alleged that such statements were

outside the scope of his mayoral duties to get around the absolute immunity from suit he is afforded by the "high public officials" privilege for "all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority." *Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996). In his response in opposition to the motion to dismiss, Plaintiff has vaguely augmented his allegation of defamation to state that Peduto was "acting outside of his position as mayor" when he is alleged to have made defamatory statements because "there is no part of the mayor's job description that states he can or should talk to the media about employee discipline issues." (Docket No. 53, ¶ 30). But a "naked assertion" that Defendant Peduto acted outside his official duties without any factual development does not make Plaintiff's defamation claim plausible. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Having determined that Plaintiff has again failed to state any plausible claims for relief in the four counts of his Third Amended Complaint, the Court must decide whether to dismiss Plaintiff's claims with prejudice. The Court gives leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But futility can justify refusing leave to amend. *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (quoting *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000)). The Court has granted three motions filed by Plaintiff for leave to amend his complaint in this matter. (Docket Nos. 13, 34, 47). Plaintiff has not filed a motion for leave to amend this, his Third Amended Complaint, in response to Defendants' motion to dismiss. Because Plaintiff has repeatedly attempted but ultimately failed to cure the deficiencies of his claims, and because there is no indication that Plaintiff could cure the deficiencies discussed in this opinion by amendment, the Court will dismiss his claims with prejudice. *See Foman v. Davis*, 371 U.S. 178,

182 (1962) (noting "repeated failure to cure deficiencies by amendments previously allowed" among the reasons a district court might refuse leave to amend).

## IV.   Conclusion

For all the forgoing reasons, Defendants' motion to dismiss Plaintiff's Third Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) is **granted** and Plaintiff's claims are **dismissed with prejudice**.  An appropriate order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated:        November 17, 2023

Cc/ecf:       All counsel of record

        Mark Brentley, Sr. (via U.S. Mail)
        14 Foster Square
        Pittsburgh, PA 15212
        412-277-3059
        PRO SE